**In re Jerry SMITH and Lisa Smith.**

**GOLDEN STAR TIRE, INC., Plaintiff,**

**v.**

**Jerry SMITH and Lisa Smith, Defendants.**

**Bankruptcy No. 92–14143S. Adv. No. 92–4512.**

United States Bankruptcy Court, E.D. Arkansas, Texarkana Division.

Dec. 20, 1993.

is distinct from the status and enforceability of the claim in bankruptcy).

David J. Potter, Texarkana, TX, for plaintiff.

Rick C. Shumaker, Texarkana, TX, for debtors.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

MARY D. SCOTT, Bankruptcy Judge.

THIS CAUSE came before the Court upon the complaint objecting to discharge of the debtors. The complaint was timely filed, on December 14, 1992, pursuant to 11 U.S.C. § 727(a)(2), (3), (4), (5), and trial was held on October 27, 1993.

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(a), 1334. Moreover, this Court concludes that this is a "core proceeding" within the meaning of 28 U.S.C. § 157(b) as exemplified by 28 U.S.C. § 157(b)(2)(J).

The complaint alleges several causes of action under Bankruptcy Code section 727(a). Specifically, Golden Tire Company ("Golden") alleges that the debtors are not entitled to a discharge in this bankruptcy proceeding because they transferred property of the estate, 11 U.S.C. § 727(a)(2), made false oaths, 11 U.S.C. § 727(a)(4), failed to keep pertinent records from which their financial condition could be ascertained, 11 U.S.C. § 727(a)(3), and failed to explain a loss of assets, 11 U.S.C. § 727(a)(5). The debtors, in response, deny that they had any intent to defraud creditors or otherwise deceive the Court and creditors. Since the Court finds that a discharge must be denied pursuant to sections 727(a)(2) and (a)(4), the remaining causes of action are not addressed.

Section 727(a), provides as follows:

The court shall grant the debtor a discharge, unless,

(2) the debtor, with the intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—

(A) property of the debtor, within one year before the date of the filing of petition; or

(B) property of the estate, after the date of the filing of the petition;

(3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case;

(4) the debtor knowingly and fraudulently, in or in connection with the case—

(A) made a false oath or account; * * *

(5) the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities. * * *

11 U.S.C. § 727(a)(2), (3), (4), (5).

*Fraudulent Transfers: Section 727(a)(2)*

■ The Court finds that the plaintiffs have sustained their burden with regard to section 727(a)(2) and specifically with respect to the element of intent. In order to meet their burden under 727(a)(2)(A), plaintiffs must show:

(1) a transfer of property occurred;

(2) the property was property of the debtor;

(3) the transfer occurred within one year of the filing of the petition; and

(4) the debtor had, at the time of the transfer, intent to hinder, delay or defraud a creditor.

*In re Hodge*, 92 B.R. 919 (Bankr.D.Kan. 1988).

■ The element of intent to deceive involves a two-part inquiry. First, the debtor's actual intent must be found as a matter of fact from the evidence presented. Of course, the objecting party must generally rely on a combination of circumstances which suggest that the debtor harbored the necessary intent. The Court may then draw an inference from this evidence. *In re Van*

*Horne*, 823 F.2d 1285, 1287 (8th Cir.1987). The second prong of the inquiry involves a determination, as a matter of law, whether the demonstrated intent is that intent proscribed by the statute. The question is whether the intent is sufficiently abusive to merit denial of discharge.

Within the year prior to bankruptcy, the debtors transferred numerous items of property, all to close friends or relatives. These transfers were not listed on their schedules. Examples included the transfer of a 1975 Coachman Camper Trailer to a close friend,[1] without transfer of title, and without consideration, in addition to transfers of other vehicles, a boat, firearms, and archery equipment.[2]

■ The debtors asserted that they never tried to hide any property, and that when asked about specific items of property, they answered all of the questions. In fact, the debtors did not answer all questions: the bankruptcy schedules are the first and primary "questions" asked of a debtor. Since the schedules were false, the questions were not in fact "answered." Also, it is not for debtors to merely "answer questions" put to them at the section 341 meeting. Debtors are required to come to the bankruptcy court with open books and records, disclosing in the first instance, all of their transactions, including transfers of property. Merely "glancing" at the typed petition and schedules does not comport with the requirements of the Bankruptcy Code. Debtors have an affirmative duty to disclose in order to obtain the incredible relief afforded by the "fresh start" in bankruptcy. Clearly, the debtors did not comply with the written requirements of the Bankruptcy Code.

Finally, their demeanor at trial was not consistent with truthfulness. Moreover, the content of their testimony convinces the Court that they had the requisite intent to defraud the creditors. They have no credible explanations for their omissions, transfers to relatives, and failure to properly disclose their transactions.

---

**1.** This friend was not listed as a creditor.

**2.** The trustee testified that he discovered that the debtors had sold some assets and had "con-

cerns" about the reasons for such sales. However, he took no action, other than to direct debtors to retrieve the camper.

*False Oath: Section 727(a)(4)*

 Section 727(a)(4), false oath or account, also contains an intent element for denial of discharge. The Court finds that the plaintiff has met its burden of proof with respect to this section. The debtors signed a voluntary petition, schedules of assets and liabilities, and a statement of financial affairs, all under penalties of perjury. These written declarations have the force and effect of oaths. *In re Sanders,* 128 B.R. 963 (Bankr. W.D.La.1991). Moreover, the debtors testified at the creditors meeting, held pursuant to section 341. At that meeting, the debtors were asked specific questions regarding their schedules, at which time they reaffirmed all of the information contained in the schedules. However, when more closely examined regarding specifics, it was discovered that material omissions in the schedules existed. Thus, not only did the debtors make false statements in the schedules, they falsely testified during the section 341 meeting.

For example, the debtors claimed a total funds in all checking and savings accounts amounted to Twenty Five Dollars. In fact, the debtors had on deposit with the Commercial National Bank of Texarkana, funds in the amount of $2,239.34. The debtors failed to schedule numerous items of property and transfers of property, including a 1985 Ford Pickup Truck, a boat, a motor, a trailer, a 1988 4–Wheel Polars ATV 250 Vehicle, a 1975 Coachman Camper Trailer, and a 1978 Dodge Pickup Truck.

 This recitation makes it clear that there are a number of material misstatements on the schedules. The issue thus becomes whether these false statements were knowingly and wilfully made. In order for a false statement under oath to serve as a basis for a denial of discharge, the statement must be known by the debtor to be false and be made wilfully with an intent to defraud. This intent can be established by circumstantial evidence. *In re Sanders,* 128 B.R. 963. Moreover, statements made with reckless indifference to the truth are regarded as intentionally false. *Id.*

 In this case, the evidence leads only to the conclusion that the debtors knowingly and wilfully omitted or falsely valued assets with intent to defraud. Transfers were made to close friends and relatives and were not disclosed until confronted with evidence of the transfers. The failure to report their property and the failure to carefully read the typed schedules prior to signing them indicates to the Court the complete disregard for the duty of honesty imposed by the Bankruptcy Code. The fact that the debtors later amended their schedules does not assist them in this instance. Filing corrected schedules only after their fraud was discovered does not cure the initial falsity of the schedules and testimony. Since the initial omissions were deliberate and with the required intent, subsequent amendment does not negate the initial fraudulent intent. The Court notes that the schedules were amended, not immediately following the section 341 meeting, held on October 15, 1992, but rather, over two months later, after the complaint objecting to discharge was filed. The debtors were unable to offer any credible explanation for their failure to file proper schedules in the first instance and their failure to act to correct their false statements.

The debtors assert that they had no intent to defraud their creditors, but that the petition was hurriedly filed to avoid collection efforts by their various creditors, including the taxing authorities. Thus, they argue, any errors and omissions were due to the haste in which they filed. This defense is not credible in light of several facts. The debtors initially filed a skeleton petition with little information on it on August 28, 1992. The filing of that initial petition stayed collection efforts. The debtors were given until October 15, 1992, to file complete schedules. The false schedules which are the subject of this adversary proceeding were not filed until that date. Thus, the debtors had ample time to prepare full and complete schedules. This failure to make proper disclosure despite this lengthy "breathing space" corroborates the other evidence of fraudulent intent to file false schedules. Further, debtors were given an opportunity to correct any errors at their section 341 meeting. Rather than clarifying such errors at that time, the debtors reaffirmed the information in the schedules. Only after they realized that the omissions

had been discovered by others, did they seek to correct the false statements.

Based upon this evidence, it is

**ORDERED** that judgment will be entered in favor of plaintiff and the debtors' discharge will be denied pursuant to 11 U.S.C. § 727(a)(2), (4).

**IT IS SO ORDERED.**