NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-1502
_____

IN RE: DAVID J. AIELLO,
                                        Debtor

MARIA A. AIELLO v. DAVID J. AIELLO, Appellant

_____

On Appeal from the District Court
for the Western District of Pennsylvania
(D.C. Civil No. 3-15-cv-00193)
District Judge: Honorable Kim R. Gibson

_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
November 1, 2016

Before: HARDIMAN, SCIRICA, <u>Circuit Judges</u>, and ROSENTHAL,[*] <u>District Judge</u>

(Filed: November 28, 2016)

_____

OPINION[**]
_____

SCIRICA, *Circuit Judge*

   The United States Bankruptcy Court for the Western District of Pennsylvania

_____

[*]  The Honorable Lee H. Rosenthal, United States District Judge for the Southern District of Texas, sitting by designation

[**] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

granted Appellee Maria Aiello's Motion for Summary Judgment, finding the debt owed to her by Appellant David J. Aiello was nondischargeable in bankruptcy under 11 U.S.C. § 523(a)(4). The District Court affirmed the Bankruptcy Court order, and Mr. Aiello appeals.[1] We will affirm.

## I.

Maria Aiello was married to David Aiello's brother. When Ms. Aiello's husband passed away in 1977, Ms. Aiello renounced her appointment as executor of his estate, and David Aiello stepped in to serve as executor. Ms. Aiello later filed a petition seeking an accounting of Mr. Aiello's administration of the estate, and in 2001, filed exceptions to the accounting in the Court of Common Pleas of Elk County, Orphans' Court Division ("Orphans' Court"). Ms. Aiello alleged Mr. Aiello had engaged in self-dealing and breached his fiduciary duty.

The Orphans' Court held an evidentiary hearing over the course of several days, after which it issued its Findings of Fact, Conclusions of Law and Opinion. The Orphans' Court found:

- Mr. Aiello redeemed 100 shares of the estate's interest in Ridgway Cable Television, Inc. for a $200,000 note after the shares had been valued at $400,000 and shortly before the company was sold for $1.5 million. Mr. Aiello and another brother, Victor, were the only two remaining shareholders. The Orphans' Court imposed a $300,000 surcharge against Mr. Aiello for self-dealing.

- Mr. Aiello purchased 125.5 of the estate's shares of stock in St. Mary's Pressed Metals, Inc. ("SMPM") without making an effort to market the estate's shares

[1] The Bankruptcy Court had jurisdiction pursuant to a Chapter 7 bankruptcy filed on September 6, 2012. The District Court had jurisdiction over the appeal from the Bankruptcy Court's order under 28 U.S.C. § 158(a). We have jurisdiction under 28 U.S.C. § 158(d)(1).

2

publicly or privately. Other shares of the estate's stock were purchased by a group of individuals that included Mr. Aiello and the attorney he hired to represent the estate. The Orphans' Court described Mr. Aiello's actions in connection with the sale and purchase of the shares of SMPM stock as "blatant acts of self-dealing" and voided the transfer of the estate's shares of stock. J.A. 125.

- Mr. Aiello loaned $250,000 of the estate's funds to SMPM without disclosing the loan to Ms. Aiello. Mr. Aiello subsequently forgave the balance of the loan. Mr. Aiello was also a creditor of SMPM, but he did not forgive any obligation owed to him by SMPM. The Orphans' Court found Mr. Aiello offered "no reasonable or rational explanation" for forgiving the balance due to the estate and imposed a surcharge of $49,268.12, equal to the balance of the loan. J.A. 116.

- Mr. Aiello failed to have a stock certificate issued for the estate's remaining 18 shares of SMPM stock. The Orphans' Court found Mr. Aiello "ha[d] not fulfilled his duties as the Estate executor" in connection with those shares. J.A. 116.

- Mr. Aiello encouraged Ms. Aiello to invest estate funds in Salberg Auto Wreckers, of which Mr. Aiello owned 50%. At his urging, Ms. Aiello invested $50,000 of the estate's funds in the business. Ms. Aiello never received any income or return on her investment, and when the business was sold, Ms. Aiello received only $31,571.75 from the sale proceeds. The Orphans' Court imposed a surcharge for the $18,428.35 loss based on Mr. Aiello's self-dealing.

- The estate held interests in three pieces of real property. Mr. Aiello conveyed the estate's interest in each of the three properties: one to himself, one to his brother, Victor, and one to Victor's family trust. The estate's interest in each of the three properties was conveyed without consideration. The Orphans' Court found Mr. Aiello "unequivocally violated his fiduciary duty with regard to these conveyances." J.A. 129. It voided Mr. Aiello's interest in the property he conveyed to himself and imposed a constructive trust for Ms. Aiello's benefit.

- The Orphans' Court found Mr. Aiello "failed entirely to keep and protect the Estate records and to properly administer the Estate, which he treated as a clearinghouse for his own transactions and enterprises." J.A. 113. The Orphans' Court added, Mr. Aiello "failed in the performance of his fiduciary duties by not exercising the assiduity, caution, acumen and expertise that a prudent or reasonable person would ordinarily utilize in the management of their own affairs." J.A. 113. It imposed a surcharge of $25,000 for Mr. Aiello's failure to act in the best interest of the estate and its beneficiaries.

Mr. Aiello appealed, and the Superior Court of Pennsylvania affirmed the decision of

3

the Orphans' Court.

In 2010, judgment was entered against Mr. Aiello in the amount of $1,021,723.34, based upon the surcharges, with interest, imposed by the Orphans' Court. Mr. Aiello filed a Chapter 7 bankruptcy petition in the United States Bankruptcy Court for the Western District of Pennsylvania in 2012. In 2014, Ms. Aiello filed a complaint to determine dischargeability in Mr. Aiello's bankruptcy proceeding. She subsequently moved for summary judgment, contending the judgment arising from the Orphans' Court decision was nondischargeable and the doctrine of collateral estoppel precluded Mr. Aiello from relitigating issues previously decided by the Orphans' Court and the Superior Court.

The Bankruptcy Court granted Ms. Aiello's motion and found the debt nondischargeable because it arose from "fraud or defalcation while acting in a fiduciary capacity." 11 U.S.C. § 523(a)(4). It applied the doctrine of collateral estoppel to the findings of the state courts regarding Mr. Aiello's conduct and found the record sufficient to establish as a matter of law that Mr. Aiello had the requisite scienter for defalcation.

Mr. Aiello appealed the Bankruptcy Court's decision to the District Court, and the District Court affirmed the Bankruptcy Court's order in its Memorandum Opinion and Order dated February 17, 2016. This appeal followed.

**II.**[2]

---

[2] In reviewing orders of the Bankruptcy Court, we review factual findings for clear error and exercise plenary review over questions of law. *In re Graves*, 33 F.3d 242, 246 (3d Cir. 1994). "[O]ur review duplicates that of the district court and we view the bankruptcy

4

Mr. Aiello's primary argument is that the Bankruptcy Court erred in its application of the doctrine of collateral estoppel. Mr. Aiello contends the Orphans' Court was not required to, and indeed did not, make any findings with regard to Mr. Aiello's state of mind when it entered judgment against him for self-dealing and breach of fiduciary duty.[3] The absence of any finding regarding his state of mind, Mr. Aiello contends, precludes the application of the doctrine of collateral estoppel because the United States Supreme Court has held defalcation requires "an intentional wrong." *Bullock v. BankChampaign, N.A.*, 133 S. Ct. 1754, 1759 (2013). Mr. Aiello contends his state of mind remains in dispute, and summary judgment was improperly granted.

Determination of whether an exception to discharge applies is the province of federal bankruptcy courts. *Grogan v. Garner*, 498 U.S. 279, 284 n.10 (1991). Although state courts may not determine dischargeability of a debt, the principles of collateral estoppel may be applied to discharge exception proceedings to prevent relitigation of relevant issues that have previously been adjudicated by state courts. *Id.* at 284 n.11. Here, the Bankruptcy Court correctly applied the principles of issue preclusion under Pennsylvania law.[4] The Bankruptcy Court's determination of whether Ms. Aiello's

court decision unfettered by the district court's determinations." *In re Brown*, 951 F.2d 564, 567 (3d Cir. 1991).

[3] Pennsylvania law does not require a showing of bad faith or fraudulent intent on the part of the fiduciary where self-dealing is apparent from the circumstances. *In re Dobson's Estate*, 417 A.2d 138, 142 n.6 (Pa. 1980).

[4] Where the preclusive effect of a state court judgment is at issue, the federal court must apply state preclusion principles to determine the extent to which the state court judgment bars relitigation of the issues. *Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 381–82 (1985). Under Pennsylvania law, an issue previously decided cannot be relitigated when: (1) the issue decided in the prior case is identical to the one presented in

5

judgment against Mr. Aiello could be discharged turned on whether the judgment arose from "fraud or defalcation while acting in a fiduciary capacity." 11 U.S.C. § 523(a)(4). The Orphans' Court and Superior Court had conclusively resolved key issues underlying that determination, including Mr. Aiello's status as a fiduciary and the wrongfulness of his conduct while acting in that capacity. Those issues were essential to the state court's judgment, and the Bankruptcy Court was obligated to address those identical issues to determine dischargeability. Accordingly, the Bankruptcy Court correctly applied the doctrine of collateral estoppel and found Mr. Aiello could not contest the Orphans' Court findings regarding his conduct. The Bankruptcy Court's dischargeability determination *also* requires a finding regarding Mr. Aiello's state of mind, *see Bullock*, 133 S. Ct. at 1759–60, but that does not diminish the preclusive effect of the state court's findings regarding Mr. Aiello's conduct while acting as a fiduciary.

Summary judgment in favor of Ms. Aiello was also correctly granted by the Bankruptcy Court. Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine only if there is sufficient

---

the later action; (2) there was a final adjudication on the merits; (3) the parties in the later proceeding are identical or in privity to those in the earlier proceeding; (4) the party seeking to relitigate the issue decided had a full and fair opportunity to litigate the issue in the prior proceeding; and (5) the determination in the prior proceeding was essential to the judgment. *Metro. Edison Co. v. Pa. Pub. Util. Comm'n*, 767 F.3d 335, 351 (3d Cir. 2014); *Office of Disciplinary Counsel v. Kiesewetter*, 889 A.2d 47, 50–51 (Pa. 2005). There is no dispute between the parties that the second, third, and fourth elements are satisfied.

evidentiary basis on which a reasonable trier of fact could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Under *Bullock*, defalcation encompasses "conduct that the fiduciary knows is improper [and] reckless conduct of the kind that the criminal law often treats as the equivalent." 133 S. Ct. at 1759. It includes a fiduciary's conscious disregard of "'a substantial and unjustifiable risk' that his conduct will turn out to violate a fiduciary duty." *Id.* (quoting ALI, Model Penal Code § 2.02(2)(c) (1985)). "That risk must be of such a nature and degree that, considering the nature and purpose of the actor's conduct and the circumstances known to him, its disregard involves *a gross deviation* from the standard of conduct that a law-abiding person would observe in the actor's situation." *Id.* at 1760 (internal quotation marks omitted).

The state court's findings are conclusive on Mr. Aiello's wrongful conduct; accordingly, the only remaining issue in dispute was whether Mr. Aiello knew his conduct was unlawful or consciously disregarded a substantial risk that his conduct violated his fiduciary duty. The Bankruptcy Court correctly concluded no reasonable trier of fact could find that Mr. Aiello did not act in violation of his fiduciary duty with the state of mind required by *Bullock*.

Intent "must be gleaned from inferences drawn from a course of conduct." *Rosen v. Bezner*, 996 F.2d 1527, 1534 (3d Cir. 1993) (quoting *In re Kauffman*, 675 F.2d 127, 128 (7th Cir. 1981)). Many courts have concluded that undisputed evidence of egregious fiduciary violations may be used at summary judgment to find that a debtor was reckless as to the impropriety of his actions. *See, e.g.*, *In re Heers*, 529 B.R. 734

7

(9th Cir. BAP 2015) (looking to the undisputed facts in the record—a pervasive and unjustified series of breaches of fiduciary duties—to find recklessness at the summary judgment stage); *Stoughton Lumber Co. v. Sveum*, 787 F.3d 1174, 1177 (7th Cir. 2015) (similarly inferring recklessness based on cumulative facts).

Mr. Aiello's course of conduct provides sufficient circumstantial evidence of intent to conclude as a matter of law that he knew his conduct was unlawful.[5] Mr. Aiello engaged in several transactions that benefited himself and his brother Victor to the clear detriment of the estate. He sold the estate's shares of Ridgway Cable Television to himself and his brother for half their value. He sold the estate's shares of SMPM stock to himself and his business associates at prices he set. He conveyed three separate pieces of real property to himself and his brother without consideration. He urged Ms. Aiello to invest estate funds in his own ill-fated business, and he forgave the balance of a substantial loan from the estate without any rational explanation. Mr. Aiello's efforts to conceal his self-dealing transactions provide further circumstantial evidence of intent. Mr. Aiello failed to keep estate records, failed to keep Ms. Aiello informed about his management of the estate, and failed to seek court approval for transactions that required it. Mr. Aiello's repeated and blatant self-dealing and his efforts to conceal it constitute a gross deviation from the standard of conduct that a law-abiding person would observe. Summary judgment was appropriate, and the judgment against Mr. Aiello is not dischargeable.

---

[5] Alternatively, there is sufficient evidence to conclude he was at least reckless as to the impropriety of his conduct, which is sufficient under *Bullock*. 133 S. Ct. at 1759 (defining defalcation to include "reckless conduct of the kind that the criminal law often treats as the equivalent" of knowing conduct).

## III.

For the foregoing reasons, we will affirm the District Court's order entered on February 17, 2016, which affirmed the order of the Bankruptcy Court.